THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY MARSHALL, Defendant-Appellant.

First District (2nd Division)　No. 86—1304

Opinion filed January 19, 1988, *nunc pro tunc* December 22, 1987.—Rehearing denied January 19, 1988.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Nancy Black, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Anthony Marshall, was convicted by a jury of possession of a controlled substance (cocaine) in an amount greater than 10 grams but less than 30 grams with the intent to deliver. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2).) Defendant was sentenced to 12 years' imprisonment and now appeals his conviction.

Defendant contends the following on appeal: (1) the trial court erroneously denied his motion for substitution of judges; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the State's allegedly improper conduct and closing argument denied him a fair trial; (4) the trial court erroneously denied his motion for a continuance to obtain testimony of a witness; and (5) the jury's verdict was a result of coercive conduct of the trial court. For the following reasons we affirm defendant's conviction.

The record shows that charges were brought against defendant as a result of the execution of a search warrant obtained a few days before defendant's arrest. Surveillance was conducted of an apartment located at 5919 South Union, No. 2B, Chicago, Illinois, based on suspicion of drug trafficking.

At trial, the State's case mainly consisted of the testimony of two officers, Cross and Brady, who, along with others, executed the search warrant. Officer Cross testified that he observed defendant

and others enter and leave the apartment several times during the surveillance. Cross obtained a search warrant for the apartment. The warrant contained a description of "a male black, 25 to 30 years old, 6' - 6'2", 170 pounds, dark complected, known as 'Tony'."

After securing the warrant, several officers went to the apartment at approximately 8:15 p.m. on March 23, 1984. They announced their office, asked to be admitted, stated they had a warrant and were denied entry. The officers heard screaming and running from within the apartment. They used a sledgehammer to forcefully enter the apartment. Immediately after entry, the officers observed defendant sitting at a table. There were bags of "white powder," marijuana in tinfoil, plastic bags, measuring spoons and a scale directly in front of the defendant on the table. A handgun, other paraphernalia, *i.e.*, cocaine packaged in a lottery ticket (known as a "snow seal"), and a foil packet containing marijuana laced with PCP, were on the floor at defendant's feet. When the police handcuffed defendant, they recovered another bag of cocaine defendant attempted to conceal in his clenched fist. The officers searched the defendant and recovered $600 in cash and some marijuana.

There were seven others in the apartment. None of the others were arrested and none of them were sitting close to defendant.

When the officers were leaving the apartment with the defendant, he said he "wanted to leave his apartment under the control of Laverne Elliott," a/k/a Green, one of the other persons in the apartment. Defendant gave the address of that apartment as his address in the arrest report and the same address appears in the presentence investigation report.

The State's other witnesses during its case in chief were Officer Brady, whose testimony corroborated Officer Cross' testimony, and Constance Briol, a chemist who confirmed the controlled substances. Both officers testified that there were scissor "burglar bars" attached to the door but they were unlocked when the warrant was executed.

The defense consisted of the testimony of Ray Stafford, Jimmie Peeples, and Lavonne Green (a/k/a Elliott), all of whom were in the apartment at the time of the "raid." William McGaughey, the owner of the building, also testified for the defense.

Stafford, defendant's friend, testified that he, a friend (Scarborough), and defendant went to the apartment that was Alan Tidwell's (a/k/a Mickey's) house. Tidwell was deceased by the time of trial. Tidwell, Jimmie Peeples, Lavonne, and Donna Martin were at the apartment. Donna Martin was Tidwell's girlfriend. They were

cooking a meal. Defendant was standing in the doorway to the kitchen and the others were sitting on a couch when the police broke down the door. Peeples was in the process of letting another man, whom the witness did not know, out of the apartment when the door was forced open. He also testified that this other man bought cocaine from Tidwell.

Stafford also testified that the officers advised everyone in the apartment that if anyone had a weapon they better give it up. According to Stafford, Tidwell told them he had a pistol and took the officers to the bedroom to get it. He also testified that he witnessed the search of defendant and nothing was removed from defendant's pockets or hand. The packet of cocaine was on the floor between defendant and the other male that the witness did not know. Nothing was on the table.

William McGaughey testified that he was the owner of the building, Donna Martin was the lessee of the apartment, it was not rented to Tidwell or the defendant, and there were no "burglar bars" on the door.

Lavonne Green (a/k/a Elliott), also a friend of defendant's, testified that Tidwell and Donna Martin lived in the apartment, they were all cooking dinner, defendant and a couple of other guys came to the apartment, and another guy, whom the witness did not know, came to buy cocaine from Tidwell. She testified that Tidwell admitted that the cocaine was his; however, this testimony was stricken after objection by the State. She saw the officers put flour from a canister in the kitchen into a plastic bag. She also testified that she saw defendant searched and nothing was recovered from him. The cocaine on the floor was behind the guy she did not know.

Jimmy Peeples, a friend of the defendant's, testified that he and Tidwell went to the apartment, which was Tidwell's. Tidwell had been staying with Peeples for about two days prior to the raid. Tidwell and Donna Martin lived in the apartment. They were all at the apartment cooking dinner and playing cards. Later defendant, Stafford, and another guy he didn't know came over to the apartment. The unknown male came to buy cocaine from Tidwell. Defendant was not seated at the table. When Peeples went to open the door, it flew open, hit him in the chest and he fell onto a couch. He testified that Lavonne Green was at the table and Carol Martin was hiding in the bedroom closet. After the raid, he saw the police recover the cocaine from the floor, directly behind the unknown male. Tidwell took the police into the bedroom and gave them the gun.

After these witnesses testified, defense counsel sought a continu-

ance of the trial to enable him to locate Donna Martin. After a lengthy delay and the court's efforts to determine the witness' whereabouts, the continuance was denied.

The State called Officer Ramsey, who commanded the raid, in rebuttal. His testimony corroborated the other officers' testimony.

An instruction conference was held, followed by closing arguments and the charging of the jury. The jury retired to deliberate at 9:20 p.m. and returned a verdict at approximately 1:10 a.m. The jury found defendant guilty of possession with intent to deliver more than 10 but less than 30 grams of a controlled substance.

Following the denial of defendant's post-trial motions and evidence in aggravation and mitigation, defendant was sentenced to 12 years' imprisonment. This appeal followed.

I

First, defendant contends that reversible error occurred because the trial court was prejudiced against the defendant, the court denied defendant's motion for substitution of judges without transferring it for a hearing, and that a hearing is mandatory under the statute.

Defendant has failed to include the transcripts of the hearing on that motion in the record. However, the court addressed the motion during the hearing on post-trial motions.

The motion was filed pursuant to section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(c)). That section provides:

"[A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such a motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes. If the motion is allowed, the case shall be assigned to a judge not named in the motion. If the motion is denied the case shall be assigned back to the judge named in the motion." (Ill. Rev. Stat. 1985, ch. 38, par. 114—5(c).)

Defendant asserts that under the statute a hearing is mandatory and the court's failure to transfer the motion for hearing requires a reversal.

The only allegation in the motion states:

"1. That the Court has indicated in its statements to him [defendant], on March 14, 1986 and March 6, 1986, that it is

prejudiced against him."

The motion is signed by the defendant and verified by defense counsel. No affidavit is attached. The record shows that defendant's reliance on statements made by the court to demonstrate prejudice are without merit. Rather, the record shows that the court was indeed frustrated with the age of the case and defense counsel's repeated requests for a continuance.

■■ ■ Lack of specificity in a motion for substitution is a valid reason for denial even in the absence of a hearing. Defendant's right to a substitute judge for cause is not absolute but requires substantiation to insure that his claim of prejudice is not frivolously made. (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.) The trial judge does not have the burden of justifying his retention of the case. *People v. Crete* (1985), 133 Ill. App. 3d 24, 478 N.E.2d 846, *aff'd* (1986), 113 Ill. 2d 156, 497 N.E.2d 751.

■■ In this case, the trial judge did justify his denial of the motion at the post-trial motion hearing. He stated that the motion contained only a cursory allegation, was not specific and no affidavit was attached. The trial judge also stated that while defendant had appeared before him in an earlier trial, he (the trial judge) had no recollection of the outcome or sentence imposed. While defendant had appeared before this trial judge before, "the fact that a judge has ruled against a defendant in a prior case is not alone sufficient reason to disqualify that judge from sitting in subsequent cases involving the same defendant." *People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209.

Defendant has failed to meet his burden of showing prejudice. Thus, denial of the motion was proper.

## II

■■ Next, defendant contends that the State's evidence failed to establish his guilt beyond a reasonable doubt because: (1) the defense witnesses' testimony contradicted the State's witnesses' testimony; and (2) there was no evidence that defendant had the requisite intent to deliver. Defendant reasons that he was charged with possession with intent to deliver greater than 30 grams of cocaine but was convicted of possession of greater than 10 grams but less than 30 grams. Thus, defendant asserts that the jury's verdict establishes their rejection of plaintiff's case and the officers' testimony that all the drugs in the apartment were possessed by defendant.

The record shows that the bag of cocaine recovered from

defendant's clenched fist by the officers weighed 13.88 grams.

Defendant's first contention that he was not proven guilty beyond a reasonable doubt because the defense witnesses' testimony contradicted the State's witnesses' testimony is unpersuasive. The testimony was indeed conflicting. However, resolutions of factual disputes, the assessment of the credibility of the witnesses, and the weight to be given to the evidence are within the sole province of the jury. On review, an appellate court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of defendant remains. *People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136, *cert. denied* (1984), 467 U.S. 1218, 81 L. Ed. 2d 371, 104 S. Ct. 2666.

■■ ■ A conviction for possession of a controlled substance will be sustained where the State establishes that the accused knew of the presence of the substance and that the substance was in the immediate and exclusive control of the accused. (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 288, 472 N.E.2d 175, *appeal denied* (1984), 99 Ill. 2d 531, citing *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Knowledge and control are findings of fact and such findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Cruz* (1984), 129 Ill. App. 3d 278, 288, 472 N.E.2d 175.

■■ Application of the above shows that the jury determined defendant's guilt according to their determination of the credibility of the witnesses, the weight to be given the evidence and the court's instructions. The evidence wholly supports the conviction.

■■ Defendant's next argument is that there was no proof of intent to deliver. Whether an individual possesses the intent to deliver a controlled substance is not always subject to direct proof. A reasonable inference of intent is permitted where the amount of controlled substance possessed could not be viewed as designed for personal consumption. This inference of intent may be enhanced by the combination of drugs and the manner in which they are kept. *People v. Chrisos* (1986), 151 Ill. App. 3d 142, 502 N.E.2d 1158, *appeal denied* (1987), 114 Ill. 2d 548.

In *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 479 N.E.2d 428, the court discussed other factors that may support or strengthen the inference that narcotics were possessed with the intent to deliver, namely, the combination of controlled substances in defendant's possession, the manner in which they were kept, the

presence of other paraphernalia and the existence of weapons.

In the case at bar, the evidence shows that other drugs, a gun, money (in defendant's pocket) and drug paraphernalia were present. Thus, the inferences drawn by the jury, as the triers of fact, were not inherently impossible or unreasonable and the conviction will stand. *People v. Hunter* (1984), 124 Ill. App. 3d 516, 525, 464 N.E.2d 659, *appeal denied* (1984), 101 Ill. 2d 571.

Defendant maintains that the evidence established that defendant was merely a visitor in the apartment. We disagree. The officers testified that after placing the defendant under arrest, defendant asked Lavonne Green (a/k/a Elliott) to clean *his* apartment and defendant gave that same address as his to the police for the purposes of the arrest report, completed after the arrest. Also, the record shows that the same address appears on defendant's presentence investigation report.

Defendant insists that possession of 13.88 grams is not such a large amount as to create that presumption. Instead, defendant argues that a more reasonable presumption is that defendant may have purchased the drugs from Tidwell. We simply cannot agree. The jury's verdict was supported by the evidence and the inferences drawn were well within reason based on the evidence. The State proved defendant guilty beyond a reasonable doubt.

### III

Next, defendant contends that he was denied a fair trial because: (1) the State improperly used the search warrant to bolster its case; (2) the State committed prejudicial error by arguing unsupported allegations that defendant sold drugs to children; and (3) the prosecutor's closing arguments contained numerous impermissible references to the search warrants.

First, defendant argues that the State's repeated reliance on hearsay contained in the warrant requires reversal and remand for new trial. We disagree.

The record shows that the State made references to and elicited testimony concerning the surveillance of the apartment, the procedure followed by the officers when they obtained the search warrant, and the contents of the warrant, without objection by defendant. Most of the evidence concerning the warrant was elicited from the State's first witness, Officer Cross.

Defendant lists three instances where the contents of the search warrant were elicited by the State from the three officers who testified. At first, when the description in the warrant was mentioned by

the witnesses, defendant did not object. When defendant finally did object, the court sustained the objection, struck the testimony and instructed the jury to disregard it. The record also demonstrates that the State introduced the warrant along with Officer Cross' police report as an exhibit. The exhibit was admitted without objection by defendant. (While admitted, it did not go to the jury.) The first time defendant objected to the exhibit was at the close of all the evidence prior to closing arguments. Defendant cannot now claim error.

Defendant relies solely on the case of *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, *cert. denied* (1983), 460 U.S. 1040, 75 L. Ed. 2d 792, 103 S. Ct. 1433, in support of his argument. In *Garcia*, the court found references before the jury concerning information supplied by an undisclosed informant to be improper. That error was compounded since the informant remained unidentified and unavailable for cross-examination. 109 Ill. App. 3d at 154.

In this case, the jury heard Officer Cross testify about the surveillance and the contents of the warrant, which he procured. Unlike the undisclosed informant in the *Garcia* case, Officer Cross was subject to cross-examination by defendant.

Defendant also maintains that his conviction should be reversed and a new trial ordered because he was denied a fair trial by various improper arguments made by the prosecution.

Defendant cites to two areas of the State's closing argument. First, the State's argument about the street value of a gram of cocaine and that defendant intended to deliver the cocaine to the neighborhood, addicts, children and other members of the community. Second, the State's repeated references to the search warrant after defense objections were sustained.

The State responds that the comments complained of were based on the evidence or reasonable inferences from that evidence and any error was harmless in light of the evidence of defendant's guilt and the fact that the jury was instructed to disregard any arguments not based on the evidence.

As to defendant's first contention, the record shows that the court struck the reference to delivery to children and the neighborhood *sua sponte*, instructed the jury to disregard that argument, and instructed counsel to argue based on the evidence. Any prejudice caused by the remarks was cured by the trial court's immediate ruling and its instructions to the jury. *People v. Shum* (1987), 117 Ill. 2d 317, 348, 512 N.E.2d 1183, 1194.

We also find any error as to the defendant's second contention

concerning the State's repeated references to the search warrant to be harmless.

We cannot approve of the State's repeated references to the contents of the search warrant after defense objections were sustained and find that those repeated references were improper. However, our review of the record shows that the references by the State did not rise to the level of prejudicial error.

While it is improper to make arguments unsupported by the evidence, a prosecutor is allowed wide latitude in closing arguments. (*People v. Patterson* (1986), 140 Ill. App. 3d 421, 488 N.E.2d 1283, *aff'd People v. Thomas* (1987), 116 Ill. 2d 290, 507 N.E.2d 843, *cert. granted sub nom. Patterson v. Illinois* (1987), ___ U.S. ___, 98 L. Ed. 2d 186, 108 S. Ct. 227.) A prosecutor may comment on the evidence and draw legitimate inferences, even if those inferences are unfavorable to defendant. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) In this case, the jury heard testimony about the surveillance and the contents of the search warrant from the State's witnesses. Moreover, the search warrant was admitted into evidence without objection.

Generally, improper prosecutorial arguments do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.) In this case, defendant has failed to demonstrate any prejudice. The arguments were indeed based on facts in evidence. References to the search warrant, while improper after objections were sustained, did not individually, or cumulatively, prejudice the defendant.

We find that, in view of all of the evidence presented at trial, the court's admonitions to the jury following the State's comments and defendant's objections, and the court's instruction on the nature of closing arguments, any error suffered as a result of the prosecutor's comments was harmless. (*People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650.) We cannot conclude that the verdict in this case would have been different absent these remarks. (See *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) Thus reversal is not warranted.

Moreover, the jury's verdict that defendant was guilty of possession for greater than 10 grams but less than 30 grams demonstrates that the defendant was not prejudiced by any remarks whatsoever. Rather, the verdict was a result of the jury's determination of the credibility of the witnesses and the weight to be given to the evidence presented. In view of the overwhelming evidence of defend-

ant's guilt presented during trial, any error suffered as a result of the remarks at issue was harmless. *People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650.

## IV

Next, defendant asserts that the court erroneously denied him a continuance, at the end of trial, to permit him to obtain a "material witness." This argument has no merit.

The record contains lengthy discussions on this issue and wholly supports the trial court's finding that defense counsel was dilatory in attempting to locate the witness.

The granting or denial of a continuance to procure a witness is within the sound discretion of the trial court. On review, this court must determine whether defendant acted diligently in his attempts to obtain the evidence, whether the evidence would be material to the case and might affect its outcome, and whether defendant has been prejudiced in his right to a fair trial. *People v. Timms* (1978), 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321.

The record shows that the case had been continued twice at defendant's request in order to permit time to secure this witness. In his opening statement to the jury, defense counsel himself stated that some witnesses in the apartment could not be located. The trial court repeatedly told defendant, throughout the trial, when to have his witnesses present. At one point, defense counsel represented to the court that he would have only one witness.

The record contains a lengthy discussion regarding defense counsel's delays concerning this witness. The trial court found that defense counsel had not talked to this witness since December. The trial was held in March. Defense counsel's only contact with the witness was by phone and counsel had never issued a subpoena to secure her testimony.

According to defense counsel, the witness was told "by friends" and other defense witnesses to be present but was never given a date or time certain. The record shows that the trial court was extremely patient with defense counsel and gave him wide latitude in attempting to locate the witness. The court even attempted to help locate her by contacting someone who resided one block from where the witness allegedly lived.

Several recesses were taken to attempt to phone the witness at two phone numbers that an employee of defense counsel gave to the court. At one point, this employee was put under oath and ques-

tioned by the court. The court determined that witness was lying and, in fact, had not spoken to the witness. She spoke with the witness' mother but failed to leave any message whatsoever.

Defendant failed to secure the appearance of the witness, no subpoena was issued, the witness was never really told when to be there, and in fact, no one knew for certain if anyone ever told the witness anything specific. Defendant cannot now claim error.

The defendant knew the witness' name since the date of the occurrence, which was two years prior to trial. At one time during a pretrial hearing, defense counsel told the court he had located her.

Additionally, we note that the testimony would have been cumulative. Defendant's offer of proof showed that the witness would have testified that she lived at the apartment with Tidwell, she leased the apartment, and defendant did not live there. Other defense witnesses testified to the same contentions. Thus, the witness' testimony would have been cumulative. Therefore, she was not a material witness.

■■ In the case at bar, defendant was not diligent, the testimony would have been cumulative and not material to the case. We cannot agree that the witness' testimony would have affected the outcome. (*People v. Killings* (1986), 150 Ill. App. 3d 900, 906, 501 N.E.2d 1363.) The court did not abuse its discretion when it denied defendant a continuance.

## V

■■ Lastly, defendant contends that he was denied his right to a trial before an impartial jury because the court required defense to rest in front of the jury and the jury did not begin their deliberations until 9:20 p.m. on the evening before Good Friday.

The record shows that defense counsel's lengthy delays, arguments, and continuing refusals to abide by the court's denial of the defense motion for continuance to secure an additional witness caused the jury to begin their deliberations at that late hour.

After denial of defendant's motion for continuance, a lengthy delay resulted from the court's efforts to "aid" defendant and discover the facts in order to determine whether defendant was diligent in his attempts to secure the witness. The court denied defendant's motion for a continuance and then defendant refused to rest his case.

After defendant's first refusal to rest, the court dismissed the jury and conducted further inquiry of an employee of defense counsel regarding her attempts to reach the witness. As we indicated

earlier, this employee was put under oath and questioned by the court. The court determined that she was lying.

The court advised defendant that it would bring the jury out so that defendant could rest his case in front of the jury. The court did not command defendant to rest his case in front of the jury. Rather, the jury was brought out, the court asked if defendant rested, and defense counsel merely said no. The jury was removed from the courtroom.

At this time, the court continued its efforts to locate the witness by contacting someone who lived in the area where the witness allegedly lived. The court found a lack of diligence on defense counsel's part. There was no reasonable degree of assurance that this witness would be coming to court.

The jury was called back into court and defense counsel stated they had no further evidence to offer that night. Accordingly, the court considered the defendant had rested and permitted the State to call their rebuttal witness.

Since it was defendant's own actions that caused lengthy delays, he cannot now claim error. *People v. Brown* (1980), 87 Ill. App. 3d 368, 371, 409 N.E.2d 81.

■ Defendant also contends that the verdict was coercive because the jury felt compelled to reach a verdict that evening. The record shows that after the jury had the case for about three hours, the court inquired if they were close to reaching a verdict or if they wanted to adjourn for the evening. The jurors requested another 20 minutes. The length of jury deliberations is a matter within the trial court's discretion and will not be disturbed absent an abuse of that discretion. (*People v. Daily* (1968), 41 Ill. 2d 116, 121, 242 N.E.2d 170, *cert. denied* (1969), 395 U.S. 966, 23 L. Ed. 2d 752, 89 S. Ct. 2112.) The court did not abuse its discretion and the defendant was not prejudiced in any way.

Accordingly, the decision of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.