THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WAYNE WASHINGTON *et al.*, Defendants-Appellees.

Third District   No. 3—90—0079

Opinion filed November 20, 1990.

Edward Burmila, State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Bruce Cowan, of Chicago, for appellee Wayne Washington.

Harry J. Irby, of Murer & Nudo, of Joliet, for appellee Walter Robinson.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The defendants, Wayne Washington and Walter Robinson, were charged with armed violence and unlawful possession of more than 15 grams of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2; ch. 56½, par. 1401(a)(1)). They subsequently filed a joint motion to quash their arrests and to suppress all evidence flowing from the arrests. Following a hearing, the trial court granted the motion. The State appeals. We reverse and remand.

At the suppression hearing, Officer Timothy Simenson of the Crest Hill police department testified that at 5:20 p.m. on June 30, 1988, he received a tip from a confidential source. Simenson noted that although he had never received information from this source which had resulted in a conviction, he was aware that information previously received from the source had led to an arrest in another officer's case. The source informed Simenson of a cocaine dealer operating on Grover Street near Fifth Avenue in Joliet. The source proceeded to tell him that the dealer was staying at the second house north of Fifth Avenue on the west side of Grover, although no address for the house was given.

Simenson was also told that the cocaine was kept in the trunk of a late model silver/gray car that looked like a Honda Accord and was parked in front of the house. The source noted, however, that the person selling the drugs was not the owner of the car. The dealer was described as a six-foot, black male with a heavy build and a short-cropped Afro. The source further told Simenson that a person would knock on the door of the home and the dealer would come out and sell drugs from the trunk of the car. The source stated that he had been standing at the open trunk of the gray car the previous day and had seen money, a gun, and a substance the dealer said was cocaine inside the trunk. However, the source had not witnessed any narcotics transactions. The source further indicated that a second vehicle, a 1978 or 1979 gold Oldsmobile Delta 88 or 98 parked across the street from the house, was also involved and was used either in the delivery of the drugs or as a place to hide them.

Officer Simenson testified that upon receiving this information, he and several officers proceeded to the location and set up a surveillance. Simenson stated that when he arrived, he observed a house which fit the description given by the source. A gray 1985 Nissan was parked in front of the house, and a gold Oldsmobile was parked across the street. He also saw a man fitting the description of the drug dealer carry two grocery bags and a shoulder purse from the house to

the open trunk of the Nissan. The man was later identified as defendant Robinson. Simenson stated that Robinson proceeded to put the bags in the trunk. Two other people were also near the trunk at the time. Robinson and one of those people then got into the Oldsmobile parked across the street and drove away. Simenson subsequently ran a check on the license plates and found that the Nissan was registered under a woman's name, thereby corroborating the source's information that the car did not belong to the dealer.

Simenson further testified that approximately 40 minutes later, Robinson returned in the Oldsmobile with defendant Washington and parked behind the Nissan. Washington walked to the rear of the Nissan, opened the trunk, and began doing something in it. Simenson stated that although he did not see Washington violate any laws, at that point based upon the information from his source and his own corroboration of that information, he felt it was necessary to investigate the matter further and speak with the defendants. He then gave the signal to the other officers to move in.

Simenson stated that he and another officer approached Robinson with their guns drawn and identified themselves as police officers. After making Robinson get out of the car, they began questioning him about its ownership. Robinson told the officers that he did not know whose car it was. Simenson then asked Robinson who owned the man's purse that he saw inside the car. Robinson again responded that he did not know.

Police officer Patrick Kerr testified that upon receiving the order to move in, he approached Washington at the trunk of the Nissan and stated, "Police officer, don't move." Kerr stated that he had his weapon drawn and pointed at Washington because he had been informed that a gun was in the trunk of the car. He also noted that he could not see Washington's hands. For his own protection, Kerr proceeded to search Washington and found three concealed handguns on him. Washington was subsequently arrested for the possession of the weapons and for the possession of some cocaine also found on him.

Officer Kerr immediately informed Officer Simenson that he had found concealed weapons on Washington. Officer Simenson in turn began searching Robinson and the contents of the car. Although no guns or drugs were found on Robinson, the search uncovered a large quantity of cocaine inside the man's purse. At that point, Robinson was handcuffed and placed under arrest.

Defendant Robinson testified that on the night in question he drove to Grover Street and Fifth Avenue and pulled up behind the Nissan. Shortly thereafter, police came out from everywhere with

their guns drawn and blocked his car. Two officers told him that he was under arrest and immediately handcuffed him. He stated that he did not recall telling the police that he did not know whose car it was. Robinson testified that he had borrowed the car the night before from a friend. He further stated that he had not been in the area prior to the time he arrived in the Oldsmobile.

Defendant Washington testified that he was an insurance salesman and that he went to the house because he had a contract for his brother to sign. He explained that a female friend had dropped him off around the corner from Fifth and Grover, and while he was walking, Robinson drove by and offered him a ride. Washington stated that he got out of the car and went to the trunk of the Nissan, which was owned by a friend of his, because he needed to remove the insurance contract for his brother. When he opened the trunk, police with guns pointed at him screamed, "Don't move, you're under arrest." He was then searched and arrested.

Following the hearing, the trial court made the following findings. When the police officers approached the defendants, they did not have probable cause to arrest or to conduct a warrantless search. With respect to defendant Robinson, the court found that the approach made by the police was a proper *Terry* stop in that Officer Simenson furthered his investigation by questioning Robinson after asking him to exit the car. When the search of Washington uncovered weapons and contraband, the police gained probable cause to search the car and its contents.

With respect to the propriety of Washington's arrest, the trial court initially noted that the basis for Robinson's arrest hinged on whether Washington's arrest was proper. The court found that Officer Kerr's actions in approaching Washington with his gun drawn and then proceeding to immediately pat search him without asking any questions constituted an arrest without probable cause. It therefore quashed Washington's arrest. Since Robinson's arrest rested on the propriety of the search of Washington, it also quashed Robinson's arrest and suppressed all of the evidence flowing from both arrests.

The State argues on appeal that the trial court erred in finding that the temporary detention and weapons search of Washington was an arrest. Rather, they argue that it was actually a valid *Terry* stop accompanied by a frisk for the officer's protection.

■■ A police officer may approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) However, to justify the stop, the police

officer must be able to point to specific, articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the intrusion. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.

■■ ■ In the course of an investigatory stop, the police officer may, in the interests of his own protection, conduct a reasonable search for weapons whenever he has reason to believe that he is dealing with a person who is armed and dangerous. (*Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881.) To justify a protective frisk, the officer need only show that it was more probable than not that the person possessed an instrumentality which could be used to commit bodily harm. (*People v. Kantowski* (1983), 98 Ill. 2d 75, 455 N.E.2d 1379.) A reviewing court will not disturb a trial court's finding on a motion to suppress unless that finding is manifestly erroneous. *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.

In the instant case, the trial court found that the stop of Robinson was a proper *Terry* stop. However, it further found that the actions of Officer Kerr in approaching Washington with his gun drawn and immediately searching him constituted an arrest without probable cause. Therefore, since Robinson's arrest rested on the propriety of the search of Washington, it quashed both of their arrests and suppressed all evidence from those arrests. We must therefore determine whether the stop made by the police of Washington constituted an arrest. We find that it did not.

■■ The police were given a fairly detailed description of the dealer, the location of the drug activity, and the cars involved in storing and transporting the cocaine. This information was then corroborated by the police when they set up a surveillance of the house.

The police observed Robinson, who matched the description given by the informant, leave the house and place two grocery bags in the trunk of the gray Nissan, which also had been described by the informant. They subsequently watched him drive away in the Oldsmobile parked across the street, thus providing further corroboration of the information given by the informant. Robinson later returned with Washington and parked directly behind the Nissan in the driveway.

Washington proceeded to the rear of the Nissan and began doing something in it. At that point, the officers properly approached the defendants for questioning. The mere fact that their guns were drawn did not convert the stop into an arrest. (*People v. Jackson* (1986), 145 Ill. App. 3d 789, 495 N.E.2d 1359.) Moreover, we find that Officer Kerr's search of Washington was proper given his knowledge that a

gun was in the trunk of the car and Washington was standing near the open trunk. Based upon the above, we find that Officer Kerr's search of Washington was reasonable and that the officer's actions did not amount to an arrest.

Accordingly, the judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GORMAN and STOUDER, JJ., concur.