THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER ROBINSON, Defendant-Appellant.

Third District   No. 3—91—0726

Opinion filed August 7, 1992.—Rehearing denied September 25, 1992.

Ira B. Goldstein, Ltd., of Joliet (Ira B. Goldstein, of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Following a jury trial, defendant Walter Robinson was convicted of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)). Defendant was sentenced to a six-year term of imprisonment. On appeal, defendant contends: (1) that the trial court erred in finding certain evidence inadmissible; (2) that defendant's trial counsel was ineffective; and (3) that defendant was not proved guilty beyond a reasonable doubt. We affirm.

On June 30, 1988, police officers were conducting a surveillance operation on Grover Street in Joliet, Illinois. Officer Timothy Simenson testified that he saw a person, later identified as the defendant, carrying two grocery bags and a shoulder bag. Defendant placed the grocery bags in the trunk of a silver Nissan, conversed with a man later identified as Wayne Washington, and crossed the street while still carrying the shoulder bag. Defendant and Washington walked toward a gold Oldsmobile in which they apparently drove away a short

time later. Approximately 30 minutes later the car returned and parked behind the Nissan. Defendant was in the driver's seat. Washington got out of the car and opened the trunk of the Nissan, at which time the police converged on the scene.

Officer Simenson further testified that he told the defendant to get out of the car and then asked him if he owned the shoulder bag. The bag was lying in the middle of the front seat of the car. According to Simenson, defendant stated that he did not own the bag, nor did he know who owned it. Defendant also said that he did not know who owned the Oldsmobile. Simenson opened the shoulder bag and found a bag containing 28.2 grams of cocaine, a gram scale and personal papers. The papers, including credit cards, a checkbook and driver's license, belonged to Washington, although this was not brought out during Simenson's testimony. Simenson also stated that he found a wallet lying next to the shoulder bag. The wallet contained $300 and various papers, including identification bearing defendant's name. Among the items in the wallet was a piece of paper containing names and dollar amounts which Simenson stated appeared to be narcotics records. The two grocery bags in the trunk of the Nissan contained a handgun holster, a telephone pager, two or three boxes that handguns would be packaged in, and a large amount of ammunition.

Sergeant Frank Christian testified that he searched the defendant after placing him under arrest. Christian found a telephone beeper attached to the waistband of defendant's shorts and also found $788 in defendant's front pocket.

Officer Patrick Kerr testified that he also observed the defendant place two grocery bags in the trunk of the Nissan. Defendant was wearing the shoulder bag at the time. Kerr also testified concerning his training and experience in drug investigations, including executing more than 500 narcotics-related search warrants. Kerr stated that certain items are commonly found when narcotic distributors are arrested, including scales, records of transactions, guns, large quantities of money and telephone pagers. Kerr examined the paper allegedly found in defendant's wallet and said that it appeared to be drug records. Kerr further testified that he searched Washington and found that he was carrying three handguns.

On cross-examination, Kerr testified that he saw the shoulder bag lying on the front seat of the Oldsmobile, but he did not ask who owned the bag. Following an objection by the State and a side-bar conference, the trial court ruled that a statement made by Washington that he owned the bag was inadmissible hearsay. This statement, according to defense counsel, was contained in Kerr's police report.

The defendant testified that he was a student at the University of Nevada at Las Vegas. Defendant was working at his grandmother's grocery store and the $788 was given to him to buy stock for the store at a wholesaler. Defendant stated that he went to Grover Street to pick up a friend to play basketball. Defendant honked the car's horn but his friend was not home and Washington, carrying the shoulder bag, asked defendant for a ride. Defendant denied ever getting out of the car. Defendant gave Washington a ride to a location on Mississippi Street and they returned to Grover about 15 minutes later. Washington got out of the car and walked towards the Nissan. Defendant called out to Washington that he had forgotten his shoulder bag. Washington opened the trunk of the Nissan and the police suddenly appeared. Defendant testified that a police officer asked him who owned the car and he said he had borrowed it from Edward Dorris. Defendant was then asked who the shoulder bag belonged to and he pointed at Washington and said it was his bag. Defendant denied knowing what was in the bag. Defendant also stated that his wallet was on his person and not on the seat of the car. Defendant further testified that the paper which the police officers had characterized as drug records was not his and had not come from his wallet. Defendant denied putting the grocery bags in the trunk of the Nissan and denied carrying the shoulder bag. He stated that when he first pulled up in his car he saw Washington putting the grocery bags in the Nissan and carrying the shoulder bag. Defendant also denied owning the telephone pager and said it was on the visor of the car he had borrowed.

Defendant first contends that the trial court erred in not allowing testimony regarding Washington's statement that he was the owner of the shoulder bag. Defendant argues that such a statement was admissible as an exception to the hearsay rule as an admission against penal interest or as an "excited utterance" or "spontaneous declaration." The State maintains that defendant has waived this issue because he failed to present these arguments to the trial court. We agree.

■ In general, a party is not permitted to tender one theory of admissibility at trial and then argue an entirely different theory on appeal. (*People v. Miller* (1977), 55 Ill. App. 3d 136, 370 N.E.2d 639; see *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132 (defendant's argument concerning spontaneous declaration was waived); *People v. Powell* (1985), 139 Ill. App. 3d 701, 487 N.E.2d 719 (defendant waived contention that evidence was admissible as a declaration against penal interest).) The trial judge in this case specifically

invited defense counsel to offer some legal basis for admissibility of the hearsay statement. Defendant contends that he proffered the theories of admissibility he now argues on appeal when defense counsel stated to the trial judge at one point that "there is [an] exception that it comes in under" and by later using the word "admission." Our review of the record clearly indicates, however, that defense counsel never offered or argued the theories of admissibility at trial which defendant now makes on appeal. This issue has been waived.

Even if we were to consider this issue on the merits, however, we would find defendant's arguments unavailing. Defendant contends that Washington's statement was admissible under *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, as a declaration against penal interest. *Chambers* was discussed by our supreme court in *People v. Bowel* (1986), 111 Ill. 2d 58, 66-67, 488 N.E.2d 995, 999:

> "Generally an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest. [Citations.] Such declarations may, however, be admitted where justice requires. [Citation.] The Supreme Court of the United States, and this court as well, have held that where there are sufficient indicia of trustworthiness of such extrajudicial statements, a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule. [Citations.] In *Chambers*, the court, in holding a declaration admissible, stated that there were sufficient indicia of trustworthiness in that (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant."

The four factors listed in *Chambers* are simply indicia of trustworthiness, however, rather than requirements of admissibility. (*Bowel*, 111 Ill. 2d 58, 488 N.E.2d 995.) The relevant question in determining admissibility is whether the declaration was made under circumstances that provide considerable assurance of reliability by objective indicia of trustworthiness. *Bowel*, 111 Ill. 2d 58, 488 N.E.2d 995.

In this case the statement by Washington that he owned the shoulder bag was supported by the personal papers in the bag bearing Washington's name. Washington's statement was not, however, made spontaneously to a close acquaintance shortly after the crime oc-

curred. It was, instead, made to a police officer in response to questioning after Washington's arrest. In addition, Washington was not called as a witness and therefore was not available for cross-examination. Finally, according to an offer of proof made at the hearing on defendant's motion for a new trial, Washington stated to Officer Kerr that he owned the shoulder bag and its contents but he specifically denied knowing about the cocaine. Therefore, we do not believe that Washington's statement "was in a very real sense self-incriminatory and unquestionably against interest." *Chambers*, 410 U.S. at 301, 35 L. Ed. 2d at 312, 93 S. Ct. at 1048.

We are similarly unpersuaded by defendant's argument that Washington's statement was a spontaneous declaration. The requirements for admissibility under the spontaneous declaration exception to the hearsay rule are: (1) the occurrence of an event sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895; *People v. McDade* (1991), 219 Ill. App. 3d 317, 579 N.E.2d 1173.) Defendant contends that the startling event in this case was when the police converged on Washington with guns drawn and placed him under arrest. Even if we were to accept this contention, we do not believe that Washington's statement regarding ownership of the shoulder bag was sufficiently related to this occurrence to qualify as a spontaneous declaration. Washington was confronted by the police as he opened the trunk of the Nissan. The shoulder bag was lying on the seat of the Oldsmobile next to the defendant. Furthermore, although not entirely clear from the record, it appears that the statement regarding ownership of the bag was made at the police station in response to questioning after Washington was informed of his *Miranda* rights. While questioning the declarant does not necessarily destroy spontaneity (*Lawler*, 142 Ill. 2d 548, 568 N.E.2d 895), nor does the mere passage of time alone control admissibility (*McDade*, 219 Ill. App. 3d 317, 579 N.E.2d 1173), we do not believe that a statement which is only tangentially related to a startling occurrence which is made in response to police questioning following *Miranda* warning qualifies as a spontaneous declaration.

Defendant next maintains that his defense counsel was ineffective. Claims of ineffective assistance of counsel are evaluated under the now familiar two-part test formulated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. Under *Strickland*, a defendant must show that

his counsel was deficient in that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In addition, defendant must demonstrate that counsel's deficient performance resulted in substantial prejudice. To establish such prejudice, defendant must show that there is a reasonable probability that but for counsel's error, the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Eddmonds* (1991), 143 Ill. 2d 501, 578 N.E.2d 952.

■■ Defendant first claims that defense counsel was deficient in failing to elicit testimony or otherwise present evidence to the jury establishing that the personal papers found in the shoulder bag belonged to Washington. We need not decide, however, whether counsel's performance in this regard was deficient, because we find that defendant was not substantially prejudiced by counsel's omission. "If the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance." (*Eddmonds*, 143 Ill. 2d at 512.) While defense counsel did not elicit testimony that the personal papers in the shoulder bag belonged to Washington, the bag and its contents were admitted into evidence and submitted to the jury. During closing arguments both the prosecutor and defense counsel informed the jury that the bag contained personal papers belonging to Washington and the jury was invited to examine them. Although defense counsel could certainly have placed more emphasis on the presence of Washington's papers in the bag, we do not believe that there is a reasonable probability that such a tactic would have affected the outcome of the trial.

Defendant next argues that defense counsel failed to read a transcript of the hearing on defendant's motion to suppress and thereby allowed defendant to be impeached with his prior testimony. Defendant had testified at a hearing on a motion to suppress evidence. At that time defendant was represented by a different attorney than the one who represented him at trial. The motion to suppress was granted by the trial court, but this court subsequently reversed that judgment. (*People v. Washington* (1990), 205 Ill. App. 3d 452, 563 N.E.2d 517.) During the suppression hearing defendant testified that he had not been in the vicinity of Grover Street prior to his arrest. The prosecutor used this testimony to impeach defendant's trial testi-

mony that he was looking for a friend on Grover, left to give Washington a ride, and then returned.

Defendant contends that his trial counsel was deficient in failing to read the transcript of the suppression hearing and thereby allowing defendant to be impeached with his prior inconsistent statement. In support of his assertion that counsel failed to read the transcript, defendant notes that during a discussion which occurred at a side-bar conference defense counsel asked the prosecutor whether Officer Simenson testified at the suppression hearing. The transcript of the suppression hearing shows that Simenson was the first witness to testify.

■ Based upon the record before us, we are unable to conclude that defense counsel was unaware of defendant's prior testimony at the suppression hearing. Although the question counsel posed to the prosecutor concerning Simenson's testimony may have been the result of his failure to read the transcript of the suppression hearing, it may also have resulted from confusion or mere forgetfulness. We note that the following exchange occurred during the side-bar conference shortly before defense counsel asked whether Simenson had testified:

"MS. BOGGS [Assistant State's Attorney]: *** My recollection is this defendant testified at the [suppression hearing] and [Simenson] was there both times.

MR. MONAHAN [Defendant's attorney]: He testified.

THE COURT: He testified at the motion to suppress?

MS BOGGS: I can pull it out. I am pretty sure he did.

MR. MONAHAN: See, he had a different lawyer at that time."

Clearly, defense counsel was aware that his client had testified previously. What is not clear is whether counsel was aware of the substance of that testimony and nevertheless chose as a matter of trial strategy to have defendant testify. No evidence was presented at the hearing on defendant's motion for a new trial concerning this issue, and we are unwilling to speculate about possible errors given that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

Furthermore, even if we were to assume that counsel failed to review the transcript of the suppression hearing, we do not believe that defendant was substantially prejudiced. The most damaging testimony linking defendant to the shoulder bag was that of Officers Simenson and Kerr that they had observed the defendant carrying two grocery

bags and the shoulder bag. They saw the defendant place the grocery bags in the trunk of the Nissan, converse briefly with Washington, and cross the street while still carrying the shoulder bag. At trial, the defendant testified that he went to pick up a friend and later gave Washington a ride, but he denied ever getting out of the car or carrying the shoulder bag. While defendant was impeached by his prior statement that he had not been to Grover Street before his arrest, in view of his consistent denials that he got out of the car or carried the shoulder bag, that impeachment amounted to a minor inconsistency.

■ Defendant also claims that defense counsel should have called Washington as a witness. However, since Washington denied ownership of the cocaine, his testimony may have been damaging to defendant's case. In general, the decision to call a particular witness is a matter of trial strategy which will not support a claim of ineffective assistance of counsel. (*People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481; *People v. Winchel* (1987), 159 Ill. App. 3d 892, 512 N.E.2d 1298.) Defendant has failed to prove that his counsel was ineffective.

Finally, defendant maintains that he was not proved guilty beyond a reasonable doubt. Specifically, defendant contends that the State failed to prove his knowledge of the presence of the cocaine or that it was in his immediate and exclusive control.

The element of knowledge is seldom susceptible of direct proof, but may be proved by evidence of acts, declarations or conduct of the accused from which the inference may fairly be drawn that he knew of the existence of the drugs at the place where they were found. (*People v. Sesmas* (1992), 227 Ill. App. 3d 1040, 591 N.E.2d 918; *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.) Where drugs are found in an area under defendant's control, an inference arises that the defendant had knowledge and control of the drugs, absent other facts and circumstances which might create a reasonable doubt as to defendant's guilt. (*Sesmas*, 227 Ill. App. 3d 1040, 591 N.E.2d 918; *People v. Wiley* (1988), 174 Ill. App. 3d 444, 528 N.E.2d 26.) It is control of a vehicle where drugs are found, rather than ownership, which is pertinent to proving exclusive control of the area where the drugs were located. (*People v. Whalen* (1986), 145 Ill. App. 3d 125, 495 N.E.2d 122.) Possession may be joint or shared and yet still be exclusive. (*People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Stupka* (1992), 226 Ill. App. 3d 567, 589 N.E.2d 1068.) Whether defendant had knowledge and control of narcotics are questions of fact to be determined by the trier of fact, and its decision will not be disturbed unless the evidence is so palpably contrary to the

verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*Sesmas*, 227 Ill. App. 3d 1040, 591 N.E.2d 918.) Moreover, when faced with a challenge to the sufficiency of the evidence, a reviewing court must examine the evidence in the light most favorable to the prosecution, and the relevant question is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ We find that sufficient evidence was presented to establish that defendant had knowledge and control of the cocaine. Officers Simenson and Kerr both saw defendant carrying the shoulder bag. At the time of defendant's arrest, the bag was lying on the front seat of the car defendant was driving. Washington had gotten out of the car, leaving defendant alone with the bag. These circumstances strongly suggest that defendant had knowledge and control of the contents of the bag. In addition, Simenson testified that he asked the defendant if he owned the shoulder bag, and defendant replied that he did not own it and did not know who did. Defendant also denied knowing who owned the car he was driving. This questioning occurred before Simenson found the cocaine in the bag. Defendant's responses to these questions are indicative of a consciousness of guilt. While defendant's account of the events leading to his arrest differed in many respects from the police officers' testimony, it is the function of the trier of fact to resolve conflicts in the evidence, and a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Fields* (1990), 135 Ill. 2d 18, 552 N.E.2d 791.) We find there was sufficient evidence to prove knowledge and control.

Defendant also contends that there was insufficient proof of his intent to deliver the cocaine. We disagree.

■ Whether a person possesses the intent to deliver a controlled substance is not always subject to direct proof. (*People v. Marshall* (1988), 165 Ill. App. 3d 968, 521 N.E.2d 538.) A reasonable inference of intent is permitted where the amount of narcotics could not be viewed as designed for personal consumption. (*Marshall*, 165 Ill. App. 3d 968, 521 N.E.2d 538.) The inference of intent to deliver may be enhanced by the presence of drug paraphernalia and by large amounts of cash and weapons. *People v. Berry* (1990), 198 Ill. App. 3d 24, 555 N.E.2d 434.

While the 28.2 grams of cocaine found in the shoulder bag is not an exceedingly large amount, we note that smaller amounts have been found sufficient to support an inference of intent to deliver. (*Berry*,

198 Ill. App. 3d 24, 555 N.E.2d 434 (3.9 grams); *People v. LeCour* (1988), 172 Ill. App. 3d 878, 527 N.E.2d 125 (3.3 grams); *Marshall*, 165 Ill. App. 3d 968, 521 N.E.2d 538 (13.88 grams).) The inference of intent to deliver in this case is substantially supported by the other items found at the time of defendant's arrest: a scale, a large amount of money, guns, ammunition, pagers and drug records. We find that there was sufficient evidence to prove that defendant intended to deliver the drugs.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BARRY, P.J., and GORMAN, J., concur.