THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINDA WILEY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WILEY, Defendant-Appellant.

Third District   Nos. 3—87—0764, 3—87—0765 cons.

Opinion filed August 31, 1988.

446

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellants.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gerald P. Ursinsi, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendants, James and Linda Wiley, were convicted in a joint trial of unlawful possession of a controlled substance and unlawful possession of a controlled substance with the intent to deliver. (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401, 1402.) Each defendant was sentenced to a nine-year term of imprisonment and a $100,000 fine. They appeal.

The evidence presented by the State tended to show that in August of 1986 Officer Michael Button of the Peoria police department

received a phone call from an anonymous person requesting the police to investigate 932 South Sumner in Peoria. The caller suspected drug trafficking because of the large number of people coming to and going from the residence. Following the call, Officer Button and others made periodic checks of the residence and observed cars belonging to suspected drug traffickers.

On September 4, 1986, Officer Button received a call from a confidential source regarding a cocaine delivery to be made at 932 South Sumner. The confidential source reported that the delivery would be made at 1 p.m. by a white couple named Jim and Linda. The couple was from Cicero, and they would be driving a newer model, light-blue Oldsmobile. In response to this information, Officer Button conducted a surveillance of the residence. At 12:58 p.m., a newer model, light-blue Oldsmobile occupied by a white couple pulled into the driveway of 932 South Sumner. As the couple approached the residence, Officer Button drove around the block to get a better view of the license plate, a check of which showed the car to be registered to Linda Wiley of Cicero, Illinois. Nothing further was done at that time.

On September 16, 1986, the confidential source told Officer Button that the Cicero woman would be making another cocaine delivery to the residence that day in the late morning. The source further reported that the woman would be traveling alone and that she would be driving the same car previously described. A surveillance was established on westbound Interstate 74, the road that would typically be taken by a person traveling from Cicero to Peoria. The car was spotted, followed a short distance and stopped. Officer Button asked the white, female driver to produce her license, which bore the name Linda Wiley. Mrs. Wiley was placed under arrest for possession of narcotics. The car was searched, and a locked briefcase was found behind the driver's seat on the floorboard. When asked to open the lock, Mrs. Wiley claimed that the briefcase belonged to a friend and that she did not know the combination. The police seized the briefcase and a yellow slip of paper providing directions to a phone booth in Peoria. The police also noticed several paintings in the trunk of the car, but did not retrieve them.

Upon obtaining a search warrant for the briefcase, Officer Burke took it to Officer Jatkowski to be opened. Officer Jatkowski testified that there was a shaving kit inside the briefcase and business papers with Mrs. Wiley's maiden name on them. Inside the shaving kit was a zip–lock-type plastic bag containing a second zip–lock-type plastic bag. The second bag held what was described as chunks of white powder. Officer Jatkowski poured the substance into a plastic evidence bag

and kept the remaining materials for fingerprint processing. Officer Burke placed the plastic evidence bag into a manila envelope and stored it in the police department's evidence locker.

On September 19, 1986, Officer Burke took the envelope to Jean Stover in the crime lab. Ms. Stover tested the substance, which she described in her notes as a white powder, and determined that it weighed 224.3 grams and that it contained cocaine. The evidence was then placed in the crime lab's vault, where it remained until November 18, 1986, when it was returned to Officer Burke. Officer Burke placed it in the police department's evidence locker.

On May 4, 1987, Officer Burke took the evidence to Ms. Stover for further testing to determine what percentage of the substance contained cocaine. In her notes regarding these tests, Ms. Stover described the substance as white powder and chunks. She determined that the substance contained 73% cocaine. She returned the evidence to Officer Burke, who again placed it in the evidence locker, where it remained until certain pretrial proceedings.

Officer Jatkowski's fingerprint processing of the briefcase and its contents revealed seven identifiable fingerprints. Three of the identifiable fingerprints were found on the papers inside the briefcase and were determined to be Mrs. Wiley's. The remaining four identifiable fingerprints were found on the outer zip–lock-type baggie and were determined to be James Wiley's. Significantly, the print of Mr. Wiley's left index finger and the print of his left thumb were found on opposite sides of the seal, tending to show that he had sealed the baggie at some point in time. It was Officer Jatkowski's expert opinion that Mr. Wiley had been the last person to seal the baggie because the last person to seal the baggie would necessarily smear any other fingerprints on the seal.

Officer Shipp of the Peoria police department testified that on March 21, 1987, he and Sergeant Johnston took a statement from Mr. Wiley regarding his version of the incident that led to his wife's arrest. Officers Shipp and Johnston did not record the statement, but returned to Peoria following the conversation and summarized it in a report. Mr. Wiley secretly recorded the statement, and a transcript of that recording was later made. The report and transcript were identical in substantial respects. Mr. Wiley stated that at 5:30 p.m. on the day before his wife's arrest Cornelius Coward, a friend from work, called and asked if he could come over to the Wiley's residence. He wanted Mr. Wiley to give him a ride to a storage locker in Joliet to pick up some belongings and then drive him to Peoria. Coward was apparently in the process of moving to Peoria. Mr. Wiley agreed to

drive him to the storage locker, but not to Peoria. When Coward arrived at the Wiley's residence he was carrying a suitcase and a duffle bag. Mr. Wiley stated that he did not see a briefcase. At the locker, Coward retrieved some paintings and put them in the trunk of the Oldsmobile previously described. Again, Mr. Wiley did not see a briefcase, but stated that he did not watch Coward while he was putting the paintings in the trunk. He then took Coward to a local bus station, but said that he did not know where Coward was headed. Coward took the suitcase and the duffle bag with him, but left the paintings. Mr. Wiley agreed to take the paintings to Peoria for Coward the following night. When Mrs. Wiley arrived home that evening, she and Mr. Wiley agreed it would be best if she drove the paintings to Peoria.

The next morning, Coward called Mr. Wiley and asked if he had left a briefcase in the Oldsmobile. Mr. Wiley checked the trunk of the car and found a briefcase. He stated that the briefcase had previously belonged to his wife, but that she had sold it to Coward for $50. He took the briefcase into the house and informed Coward that he had found it. Coward instructed him to leave the briefcase in the car and to have his wife bring it down to Peoria with the paintings. Mr. Wiley then got directions from Coward as to where his wife was to take the paintings and the briefcase and wrote them down on a yellow slip of paper. Following his conversation with Coward, Mr. Wiley placed the briefcase back in the Oldsmobile behind the driver's seat.

The defense chose not to present any evidence. The jury returned verdicts of guilty on both counts against each defendant. On appeal, Mrs. Wiley raises five issues, three of which are also raised by Mr. Wiley. We will first address those issues which apply solely to Mrs. Wiley.

Mrs. Wiley first alleges that the court erred in denying her motion to quash arrest and suppress evidence because there was no probable cause for the arrest or seizure of the briefcase. We disagree. Under Illinois law, an arrest without a warrant must be based on a finding of probable cause. To determine whether a warrantless arrest meets the probable cause requirement, the trial court must decide whether a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed or was committing an offense. The officer's factual knowledge, based upon his prior law enforcement experience, is relevant. The officer's factual knowledge may be based on information supplied by an informant's tip. In evaluating an informant's tip, the trial court should consider the reliability and credibility of the inform-

ant, the informant's basis of knowledge, and independent police investigation that corroborates the details of an informant's tip. If the trial court finds that a warrantless arrest was based on probable cause, the arrest is deemed lawful, and evidence obtained during a warrantless search incident to the arrest is admissible to prove the defendant's guilt. (*People v. Tisler* (1984), 103 Ill. 2d 226.) Our task on review is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed.

■ In the instant case, the police were first informed through an anonymous phone call that drug trafficking may be taking place at 932 South Sumner. Because the phone caller was anonymous, his reliability, credibility and basis of knowledge could not be determined, but independent investigation by the police lent credence to the caller's information. In observing the residence named by the caller, the police observed vehicles belonging to Jesse Venable and Alfred Scott. The police had information and reason to believe that these men were involved in drug trafficking.

The confidential source who gave information to the police on September 4 and 16 was a known person who had been proved to be reliable. He had previously given information to the police regarding narcotic dealings which had been corroborated by other sources. The information given on September 4 and 16 was sufficiently detailed to support an inference of reliability. (*People v. Tisler* (1984), 103 Ill. 2d 226.) Further, it was substantially corroborated through independent police investigation on both occasions. Based on our review of the totality of the facts and circumstances before the trial court, we find that the trial court had a substantial basis for determining that probable cause existed for Mrs. Wiley's arrest. Since the arrest was lawful, the evidence of the briefcase and its contents obtained during the search incident to the arrest was admissible at trial, even without the search warrant obtained by the police.

Both of the defendants argue that the court erred in admitting exhibit 10B into evidence. Exhibit 10B was the manila envelope containing the plastic evidence bag which held the cocaine. The defendants maintain that the State failed to prove a proper foundation for the evidence because Officer Burke was uncertain as to the dates he delivered the evidence to various people and because Jean Stover described the evidence as powder on the first occasion she received the evidence and powder with chunks on the second occasion she received the evidence.

■ ■ The foundation for the admission of physical evidence may be made through its identification by witnesses or through a chain of

possession. Both proofs are not required. Chain of custody foundation is required when the offered evidence is not readily identifiable or is susceptible to alteration by tampering or contamination. The chain of custody must be of sufficient completeness to render it improbable that the item has either been exchanged with another, tampered with, or contaminated. *People v. Winters* (1981), 97 Ill. App. 3d 288, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 464, 102 S. Ct. 1282.

■ In the instant case, the State laid its foundation through chain of custody testimony. That Officer Burke could not recall the exact date he took the evidence to Ms. Stover for the first set of tests does not render it probable that the evidence was tampered with or contaminated. The chain of custody was sufficiently completed in this regard when defense counsel showed Officer Burke the lab receipt he received after turning the evidence over to the crime lab. It was dated September 19, 1986. Further, Ms. Stover testified that she first received the evidence from Officer Burke on September 19, 1986. Similarly, that Officer Burke could not recall the exact date he took the item to the State's Attorney's office for pretrial proceedings does not render it probable that the evidence was tampered with or contaminated. When shown exhibit 10B on the day of trial, Officer Burke stated that it was in substantially the same condition as when he initially sealed it, except Ms. Stover's markings were on it.

■ We also disagree with the defense's argument that the chain of custody was incomplete because Officer Burke did not point out his markings on exhibit 10B. We do not deem it necessary for a chain of custody expert to point out his markings on a given piece of evidence. It is sufficient if he explains that certain markings were made by him when he handled the evidence and that each time he handled the evidence it was in substantially the same condition as it was the last time he handled the evidence, explaining any differences.

Finally, we disagree with the defendants' argument that Ms. Stover's alleged inconsistent descriptions of the cocaine rendered it probable that the evidence had been tampered with or contaminated. Her descriptions were not necessarily inconsistent. She explained that the presence or absence of moisture and the degree to which cocaine is handled may cause it to form chunks or to break down into powder form. Thus, it could be that the substance was in a powder form the first time she received it and a powder with chunks form the second time she received it. On the other hand, her second description may simply have been more accurate and complete than her first description. Regardless, the argument that the descriptions were inconsistent goes to the weight to be given the evidence, not its admissibility.

■■ ■ The defendants next argue that they were not proven guilty of the offenses beyond a reasonable doubt. Because their arguments are quite different, we will address them each in turn. Mrs. Wiley argues that she was not proven guilty beyond a reasonable doubt because the State failed to show that she acted knowingly. Where narcotics are found on the premises under the defendant's control, that fact gives rise to the inference that the defendant had knowledge and control of the narcotics, absent other facts and circumstances which might leave a reasonable doubt as to the defendant's guilt. Knowledge and control are questions of fact for the determination of the jury, and we will not disturb the jury's findings unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Strong* (1986), 151 Ill. App. 3d 28, *appeal denied* (1987), 114 Ill. 2d 555.

The cocaine in the instant case was found in Mrs. Wiley's car, which she was driving. No one else was in the car. Though she denied that the briefcase which contained the cocaine was hers, it was found to contain her papers and no one else's. Further, only her and her husband's fingerprints were found in the briefcase. The jury was not required to accept Mr. Wiley's statement concerning the ownership of the briefcase or its presence in his wife's car. We find sufficient evidence to support the jury's verdict that Mrs. Wiley acted knowingly.

■■■ Mr. Wiley raises several arguments in support of his contention that he was not proven guilty of the instant offenses. Mr. Wiley was prosecuted under an accountability theory. To sustain a conviction under such a theory, the State must establish beyond a reasonable doubt (1) that the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the crime; (2) that the defendant's participation took place before or during the commission of the crime; and (3) that the defendant had the concurrent specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) We find sufficient facts to support a finding of guilty as to Mr. Wiley.

■■■ Four of Mr. Wiley's fingerprints were found on the exterior zip–lock-type plastic bag. The position of two of those prints strongly suggests that Mr. Wiley was the last person to seal the bag and that cocaine was within the bag when he did so. Further, in his statement to the police Mr. Wiley admitted knowing that the briefcase was in the car, and in fact stated that he placed it behind the driver's seat on the floorboard so that his wife could take it to Peoria along with the other items allegedly to be delivered to Cornelius Coward. He also ad-

mitted in his statement that he provided his wife with directions to the place where she was to deliver the briefcase and paintings. From the foregoing evidence, the jury could reasonably infer beyond a reasonable doubt that Mr. Wiley was accountable for his wife's commission of the crime by sealing the cocaine in the plastic baggie, placing the briefcase in her car, and providing her with directions to the place of delivery or to the place where further directions to the place of delivery would be given. Again, the jury was not required to accept Mr. Wiley's farfetched, innocent explanation for the presence of the briefcase in the car or for his wife's trip to Peoria.

■■■ The defendants next argue that the imposition of a term of imprisonment greater than the mandatory minimum was excessive. The sentencing range for the instant offenses was 6 to 30 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(3).) The defendants were sentenced to nine years. It is axiomatic that the imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the sentence may not be altered on review. We find no abuse of discretion in the instant case. The defendants were found guilty of possession and possession with the intent to deliver 224.3 grams of a substance containing cocaine, far in excess of the 30 grams required for a Class X felony. Cocaine is included in the list of "Schedule II" controlled substances, or those substances which have a high potential for abuse, the abuse of which may lead to severe psychological or physiological dependence. (Ill. Rev. Stat. 1985, ch. 56½, par. 1206(b)(4).) In light of the large amount of cocaine involved in the instant offense and the serious nature of the substance, we find no abuse of discretion in the imposition of a nine-year term of imprisonment.

■■■ We likewise disagree with the defendants' final argument that the imposition of a $100,000 fine was excessive. The criminal code mandates that when a person has been found guilty of a drug-related offense, he shall be fined a sum no less than the full street value of the drugs seized. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1.) A police officer's testimony as to the street value of cocaine is properly admissible if the officer has sufficient special knowledge and familiarity with controlled substances to assist the court in determination of the proper fines. *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, *appeal dismissed* (1987), 115 Ill. 2d 324.

In the instant case, Officer Dan Richards was qualified as an expert in the use, pricing, and purchasing of cocaine. He testified that the street value of the drugs seized in the instant case was $168,000. There was no testimony controverting that opinion. Thus, the fine im-

posed was $68,000 less than it could have been, and any error was to the benefit of the defendants. Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.