# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Czapla*, **2012 IL App (2d) 110082**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOGUSLAW CZAPLA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0082 |
| Filed | November 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Any error that may have arisen from the admission of a recording of a 911 call including a statement in which defendant's brother said that defendant kicked the victim in his eye was not reversible plain error, since the evidence against defendant was overwhelming and defendant's claim that his right to confront the witnesses against him was violated when his brother did not testify and was not available for cross-examination was not a structural error cognizable under the second prong of the plain-error doctrine. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 08-CF-783; the Hon. Sharon L. Prather, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Louis A. Bianchi, State's Attorney, of Woodstock (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Hudson concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial, defendant, Boguslaw Czapla, was convicted of aggravated battery (720 ILCS 5/12-4(a) (West 2010)) and mob action (720 ILCS 5/25-1(a)(1) (West 2010)). The trial court vacated the mob action conviction and sentenced him to three years' imprisonment for aggravated battery. Defendant appeals, contending that the trial court erred by admitting a tape recording of a 911 call that contained a statement by defendant's brother that defendant committed the offense. We affirm.

¶ 2    On July 19, 2008, Jaroslaw "Jerry" Czapla and his wife, Deanna, held a birthday party for their daughter. Among the guests were Bobby Steele and his then-fiancée April Bieze, defendant, and Mike Trojnar. Defendant is Jerry's brother. The party, held in the garage of the Czaplas' townhouse, started around 1 p.m. There was a keg of beer and everyone was drinking.

¶ 3    At some point, Steele got into an argument with Jerry and another man about Steele's White Sox jersey. As the evening progressed, the only people left at the party were Steele, Bieze, Jerry, Deanna, defendant, his girlfriend Melisa, and Trojnar. At some point, Deanna entered the garage. Defendant asked her if she was pregnant and said something about the baby being his. This upset Steele, but he did not say anything. Suddenly, defendant punched Steele in the face. Steele and Bieze wanted to leave the party but were persuaded to stay.

¶ 4    A short time later, defendant came up to Steele and hit him in the jaw. The latter stumbled and pushed defendant away. Steele tried to walk toward the door that led from the garage to the house, but Jerry and Trojnar were in the way. Steele was pushed and fell onto the steps that led to the door. He balled up in a fetal position while defendant, Jerry, and Trojnar kicked him repeatedly. As Steele attempted to reach for the door handle behind him, he saw a black boot coming at him, which hit him in the eye.

¶ 5    Steele initially told a female officer that Jerry had kicked him. He said this because he

"wasn't in [his] right mind." He also told Bieze that Jerry had kicked him in the face. Later, at the hospital, he remembered things differently because it was less chaotic. He remembered that defendant wore pointy black boots with metal on the front, and remembered such a boot coming at him. Steele's eye was eventually removed.

¶ 6    There was evidence that defendant was the only person at the party wearing steel-toed cowboy boots. Police later seized a pair of steel-toed boots from defendant. He initially told the officers that they were the same boots he wore at the party, but Steele testified at trial that they were not. The seized boots were analyzed and found to have no traces of blood on them.

¶ 7    At trial, the prosecutor played, without objection, recordings of 911 calls that Bieze and Deanna made. (By the time of trial, Bieze had married Bobby Steele and was thus known as April Steele.) During Deanna's call, Jerry can be heard saying, "It was Bob [(defendant)], it was Bob." (Before the trial, Jerry pleaded guilty. He did not testify at defendant's trial.) The prosecutor proposed to play both recordings a second time to allow the callers to identify the various voices on the recordings. The defense objected that it would be repetitive, but the trial court overruled the objection. In closing argument, the prosecutors contended that Jerry's accusation was substantive evidence of defendant's guilt.

¶ 8    The jury found defendant guilty of aggravated battery and mob action. The trial court vacated the latter conviction on one-act, one-crime grounds and sentenced defendant to three years' imprisonment for aggravated battery. Defendant timely appeals.

¶ 9    Defendant contends that the admission of the 911 recording in which Jerry accused defendant of the crime violated his right to confront the witnesses against him. He argues that his brother did not testify and thus was not available for cross-examination. Accordingly, the admission of the out-of-court statement denied him his right to due process. Defendant acknowledges that he did not object to the evidence on this basis in the trial court but urges us to review the issue for plain error.

¶ 10    We conclude that any arguable error in admitting the statement was not reversible plain error. However, for the sake of clarity, we first decide the nature of the issue. Defendant contends that this case is governed by *Bruton v. United States*, 391 U.S. 123 (1968). There, the defendant was tried jointly with a codefendant, Evans. The trial court admitted Evans' confession against him but instructed the jury that it was not to be considered against the defendant. *Id.* at 128-29. The Court reversed the defendant's conviction, holding that it was unreasonable to expect the jury, despite the limiting instruction, to disregard the impact of the codefendant's confession. *Id.* Here, however, defendant and Jerry were not tried jointly. In fact, the latter had already pleaded guilty by the time of defendant's trial. Moreover, the statement was not in any way a confession, but was an exculpatory statement blaming only defendant for the attack. Thus, we agree with the State that *Bruton* does not control here. Instead, *Crawford v. Washington*, 541 U.S. 36 (2004), provides the proper analytical framework.

¶ 11    In *Crawford*, the Court held that testimonial hearsay by an unavailable witness accusing the defendant of a crime was inadmissible unless the defendant had had a prior opportunity to cross-examine the declarant. The statement at issue here appears to be of this type. In any event, *Bruton* and *Crawford* appear consistent (*Crawford* cites *Bruton* for support) in holding

that the statement, if it was indeed testimonial, would be inadmissible absent the opportunity for cross-examination. As noted, however, we do not reach this question, because any error was not reversible plain error.

¶ 12　　A timely and specific objection at trial is necessary to preserve an issue for review. Ill. R. Evid. 103(a)(1) (eff. Jan. 1, 2011); *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The plain-error rule is a narrow and limited exception to the strict application of the forfeiture rule. *Id.* Under the plain-error rule, we may consider a forfeited claim when: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "In plain-error review, the burden of persuasion rests with the defendant." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 13　　Initially, we agree with the State that the evidence was not closely balanced. It was virtually undisputed that defendant was one of the three men who beat and kicked Steele while he was on the ground. Steele identified defendant as the man who inflicted the final kick that cost him his eye. Moreover, defendant was the only person at the party wearing the type of steel-toed boots Steele described, which could have inflicted the severe injury Steele suffered.

¶ 14　　We acknowledge that Steele initially identified Jerry as the one who kicked him in the eye and that the boots defendant said he wore to the party did not have any blood on them (Steele testified that defendant wore different boots than the ones tested). Even if, due to these facts, we concluded that the evidence was closely balanced regarding who inflicted the most serious kick, defendant was clearly accountable for that conduct.

¶ 15　　To convict a defendant under the theory of accountability, the State must prove beyond a reasonable doubt that he (1) solicited, aided, abetted, or agreed or attempted to aid another person in the planning or commission of the offense; (2) did so before or during the commission of the offense; and (3) did so with the concurrent, specific intent to promote or facilitate the commission of the offense. 720 ILCS 5/5-2(c) (West 2010); *People v. Smith*, 278 Ill. App. 3d 343, 355 (1996). The law on accountability incorporates the "common design rule," which provides that, where two or more persons engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts. *People v. Cooper*, 194 Ill. 2d 419, 434-35 (2000).

¶ 16　　In *Cooper*, the supreme court specifically found that "a defendant may be found guilty under an accountability theory even though the identity of the principal is unknown." *Id.* at 435. There, two defendants were found guilty under an accountability theory for aggravated battery with a firearm, even though it was unclear which of the defendants shot the victim. The supreme court affirmed their convictions because the defendants were working in concert as part of a common design. The failure to identify the shooter did not preclude a finding of guilt under the common design theory of accountability. *Id.* at 436.

¶ 17 Regardless of whether defendant actually delivered the final kick, he was at least accountable for it. It is clear that defendant was an active member of the group that kicked and beat Steele. We note that the jury found defendant guilty of mob action, which, as charged here, requires the "knowing or reckless use of force or violence *** by 2 or more persons acting together." 720 ILCS 5/25-1(a)(1) (West 2010). Thus, the jury necessarily found that the three men acted together, and defendant does not dispute this finding.

¶ 18 Defendant does not really dispute that the evidence was overwhelming. Instead, he appears to contend that the error was cognizable under the second prong of plain-error analysis: the error was so serious that it deprived defendant of a fair trial regardless of the closeness of the evidence. We say "appears to contend" because defendant's entire argument on this point in his opening brief is the following: "Despite [trial] counsel's failure to preserve this issue for review, this court can review the claim for plain error, given the fundamental nature of the error affecting [defendant's] substantial right to a fair trial." At oral argument, defense counsel affirmed that defendant's argument was that the seriousness of the error alone mandates reversal.

¶ 19 In *Thompson*, 238 Ill. 2d at 613-14, the supreme court reaffirmed that the second prong of plain-error analysis is limited to structural errors. A structural error is " 'a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *Id.* at 614 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)). In *People v. Patterson*, 217 Ill. 2d 407, 424-28 (2005), that court held that confrontation-clause violations are not structural errors. Thus, because a confrontation-clause violation is not a structural error, it is not cognizable under the second prong of plain error.

¶ 20 Defendant cites two cases in support of his contention that we should reach the issue under the second prong of plain-error review. *Herron* merely states the general rule and is not factually similar to this case. In *People v. Fillyaw*, 409 Ill. App. 3d 302 (2011), we did reverse a conviction on the basis of a procedurally defaulted *Bruton* issue. However, we did so only after a careful review of the facts. In Fillyaw's appeal, he contended that a statement to a third party in which he allegedly admitted that he and a codefendant, Parker, committed the crime was inadmissible against him because it was not based on the third party's personal knowledge. We agreed. We further rejected the State's argument that the error was harmless, noting that, other than the alleged confession, the only evidence linking the defendants to the crime was the "questionable" testimony of two alleged eyewitnesses. *Id.* at 316. In the appeal of the codefendant, Parker, we stated that the erroneous admission of the evidence "necessarily affects substantial rights and satisfies the second prong of the plain-error analysis" (*id.* at 319), but we also cited *Chapman v. California*, 386 U.S. 18 (1967), for the proposition that a *Bruton* error can be harmless.[1] *Fillyaw*, 409 Ill. App. 3d at 319-20. Thus,

---

[1]Although the issue here is properly characterized as a *Crawford* issue, *Chapman* stands for the broader proposition that an evidentiary error of constitutional magnitude can be harmless. Thus, it matters not for purposes of plain-error analysis whether we characterize the issue as arising under *Bruton* or *Crawford*.

we do not read *Fillyaw* as holding that a *Bruton* (or *Crawford*) violation is automatically reviewable under the second prong of plain-error analysis.

¶ 21        The judgment of the circuit court of McHenry County is affirmed.

¶ 22        Affirmed.