No. 1-15-1515

Order filed October 29, 2019.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 21275 |
| | ) | |
| FAISON JACKSON, | ) | The Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant's right to a fair trial was not violated when the court declined to admit physical evidence or an inventory receipt. Defendant was proved guilty beyond a reasonable doubt. The State's error during rebuttal closing argument did not cause substantial prejudice or rise to the level of plain error. Similarly, defendant's right to confront witnesses against him was not violated where he forfeited the issue, and it did not rise to the level of plain error, nor was his counsel constitutionally ineffective.

¶ 2    Following a jury trial, defendant Faison Jackson was found guilty of aggravated unlawful use of a weapon and sentenced to three years' imprisonment. He now appeals contending his constitutional rights to due process and a fair trial were violated when the trial court denied his

request to submit certain evidence at trial. Defendant further contends the evidence was insufficient to prove his guilt beyond a reasonable doubt, the State's rebuttal closing was improper, and his constitutional right to confront the witnesses against him was violated, in addition to his counsel being constitutionally ineffective. We affirm.

¶ 3                                 BACKGROUND

¶ 4      Defendant was arrested and then charged with the above-stated offense after police officers witnessed him attempting to recover a handgun that he had abandoned not less than an hour beforehand.

¶ 5      The combined testimony[1] of the officers revealed that in the early morning hours on the weekend of December 4, 2011, gunshots issued near 7232 South Claremont in Chicago. Officer Ivan Lopez then saw about four individuals plus defendant with an object in his hand running towards him. Defendant, while clad in dark clothing and a gray hoodie, came about 20 feet away and the artificial lighting conditions were good when Officer Lopez announced his office and told defendant to stop. Defendant looked in his direction and instead ran towards a vehicle, threw a handgun underneath, and fled, with Officer Lopez observing this from about 8 or 10 feet away. Officer Lopez then saw that the handgun was a black revolver. Officers subsequently concealed themselves and surveilled the vehicle. As was common practice with other offenders, defendant returned about 40 minutes later. As defendant was reaching for the handgun, officers announced their office, and defendant again ran. Defendant was eventually apprehended. Both Officers Lopez and Wagner identified defendant during the subsequent show-up. Defendant was then arrested and placed in a holding cell along with other individuals. The State rested after presenting (without objection) a certified document from the State police averring that defendant

---

[1]This testimony stemmed from both the State's case in chief, including cross-examination, and the State's rebuttal evidence presented.

did not have a valid Firearm Owner's Identification (FOID) card when arrested. The State also entered the recovered gun into evidence as an exhibit.

¶ 6    As discussed later in our analysis, the defense presented evidence showing that defendant was not wearing a gray hoodie in his booking photo, taken several hours after his arrest, and his inventoried clothing did not include a gray hoodie. Rather, it included a red pullover, a black jacket, black jeans, and white t-shirt of sorts. Accordingly, defense counsel argued that defendant was not the same person that police saw with the gun. While defendant introduced his booking photo into evidence, the trial court rejected his request to introduce the physical clothing and inventory receipt.

¶ 7    After evidence and argument, the jury retired. After about an hour, the jury sent a note requesting to see "the list of clothes and personal items defendant was booked in," inquiring what the lighting conditions were in the street where the gun was thrown, and inquiring whether the booking photo was taken at the police precinct or county jail. The jury continued by querying, if the photo was taken at the county jail, was there also a photo taken at the police precinct and further asked whether there was any video footage of defendant when he was taken to the police station. The court responded by stating the jury had heard all the evidence and ordered them to continue deliberating.

¶ 8    After three and a half hours of deliberation, the jury found defendant guilty of aggravated unlawful use of a weapon. Each juror was polled with the question, "was this then and is this now your verdict" meaning "was it your verdict when you signed the verdict form and is it still your verdict." One juror responded, "It wasn't then. It is now," but the court clarified that it was the juror's final verdict. The rest of the 11 jurors simply responded, "yes." The court then

3

sentenced defendant to three years' imprisonment to run concurrent with his 35-year sentence for his armed robbery conviction stemming from a separate jury trial.

¶ 9                                    ANALYSIS

¶ 10    *Admissibility of Evidence*

¶ 11    Defendant first contends the trial court violated his constitutional right to due process and a fair trial when it declined defendant's request to introduce as physical evidence his inventoried clothing and the inventory receipt to the jury. Defendant notes that he wore the inventoried clothing in his booking photo, and asserts that had the jury been permitted to view the actual clothing and its accompanying receipt, the outcome of his trial would have been different. As a result, he demands reversal and remand for a new trial.

¶ 12    The admissibility of evidence is a matter within the sound discretion of the trial court, and its decision will not be reversed on appeal unless that discretion has been clearly abused. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). For the reasons to follow, we cannot say the court abused its discretion.

¶ 13    The evidence in this case showed that defendant was arrested at 1:16 a.m. and then placed in a holding cell with other individuals where no one was handcuffed, and the inmates were essentially left unsupervised. Around 4 a.m., defendant was "taken down" for a "booking" photograph. Officer Lopez explained that the purpose of such a photograph is to identify individuals rather than document their outer garments. Although multiple officers testified that defendant wore a gray hoodie at the time of his offense, arrest, and also when he was brought to the police district, both parties agree the trial evidence showed that about three hours later

4

defendant was *not* wearing the gray hoodie in his booking photo. Rather, he was wearing a red pullover of sorts. Defendant was later transferred to the county jail, and around 9 p.m., he was assigned different clothing while in custody. It was then that defendant's clothing – the red pullover, a black jacket, black jeans, and white t-shirt of sorts – were inventoried. A receipt was generated that included defendant's inmate number, booking number, the items inventoried, and the date. The clothing was placed in a sealed bag and remained sealed until trial when the defense attorneys, outside the jury's presence, opened it and sought to introduce the clothing.

¶ 14     In denying defendant's request to introduce into evidence the actual clothing, the trial court noted that the officer who testified about the inventory process and generated the receipt could not specifically recall the clothing defendant wore. Defense counsel countered by likening the bag of clothing to an inventoried drug packet commonly introduced in trials by the State. The court responded, "Right, but there's somebody at the beginning where the items are recovered that identif[ies] those items that can testify that they are placed into - - these items were placed in a sealed bag, they were submitted to the crime lab, and the lab received them in a sealed condition and opened them." That was not the case here. The court thus permitted the officer who collected defendant's clothing only to testify to the contents of the bag and inventoried items with reference to the receipt. The court also denied defendant's request to submit the physical inventory receipt, finding it amounted to a police report.

¶ 15     Defendant now challenges the court's determination. The foundation for the admission of physical evidence may be made through its identification by witnesses or through a chain of possession. *People v. Wiley*, 174 Ill. App. 3d 444, 450-51 (1988). Chain of custody foundation is required when the offered evidence is not readily identifiable or is susceptible to alteration by tampering or contamination. *Id*. at 451.

¶ 16    Defendant argues that he established a sufficient chain of possession as to the clothing. He argues there was "no suggestion that the clothing was altered, substituted, or tampered with, since it matched the description of the clothing receipt." We disagree.

¶ 17    As set forth, the defense failed to provide a crucial causal link in the chain of custody for defendant's clothing. While there was evidence as to what defendant wore when he was seized and taken to the police district, there was no testimony as to what defendant wore while in the holding cell. During those three unsupervised hours prior to the booking photograph, defendant could have switched clothing with another inmate, discarded his sweatshirt, or done any number of things. The clothing evidence was thus susceptible to alteration by tampering. Defendant cannot prove that the evidence sought to be admitted had not been changed in any important respect. As such, we cannot conclude the clothing at defendant's seizure would have been the same as the clothing when inventoried. See *People v. Foster*, 354 Ill. App. 3d 564, 570 (2002) (noting, reasonable measures must be taken to protect evidence from when it's seized and it must be improbable the evidence was altered). Officers Lopez and Haleem testified to that much, noting defendant's booking photo did not truly and accurately represent what defendant looked like that night because he was not wearing a gray hoodie in the photo. The court therefore did not abuse its discretion in excluding the evidence, finding an insufficient chain of custody for the clothing was established.

¶ 18    In reaching this conclusion, we reject defendant's reliance on *People v. Gholston*, 124 Ill. App. 3d 873, 890-91 (1984), wherein the police collected the defendant's clothing shortly after his arrest for sexual assault, then preserved the clothing, and sent it to a crime lab for analysis. At trial, a detective also identified the clothing as that taken from the defendant, and there was no evidence of substitution, altering, or tampering presented of even suggested. As set forth, unlike

in *Gholston*, defendant's clothing was not collected on his arrest or shortly thereafter as material evidence of his gun crime. The State also presented plenty of evidence that tampering was a possibility. Since his clothing was not properly preserved for analysis, there was an insufficient chain of custody.

¶ 19     While we cannot agree with the court's conclusion that the inventory receipt was inadmissible as a police report, it is of no moment given our above conclusion. See *People v. Garrett*, 216 Ill. App. 3d 348, 357 (1991) (a police report summarizes information obtained from various sources during the course of an investigation). The inventory receipt would not have been relevant evidence due to the causal break in the chain of custody. See *People v. Pelo*, 404 Ill. App. 3d 839, 864 (2010) (noting, evidence is relevant when it renders a matter of consequence more or less probable or tends to prove a fact in controversy). That is, neither the physical clothing nor the receipt showed what defendant was wearing prior to the booking photograph.

¶ 20     Regardless, we agree with the State that even assuming error, it was harmless. There are three approaches to determine whether an error is harmless beyond a reasonable doubt: whether the error contributed to the defendant's conviction; (2) whether the other evidence in the case overwhelmingly supported the defendant's conviction; and (3) whether the excluded evidence would have been duplicative or cumulative. *People v. Lerma*, 2016 IL 118496, ¶ 33. We cannot see how excluding that evidence contributed to the verdict. As set forth below, the identification testimony overwhelmingly supported defendant's conviction. And, given the clear testimony that defendant was *not* wearing a gray hoodie in his booking photo, nor was a gray hoodie inventoried, any introduction of the physical clothing and receipt would have been merely cumulative.

¶ 21　　In that sense, we reject defendant's argument that the jury questions reflect that the evidence in this case was closely balanced. Again, during deliberations, the jury wished to see the receipt listing defendant's booking clothing, and queried whether there was a photo taken both at the police precinct and county jail, as well as any video footage of defendant being taken to the police precinct. Rather than demonstrating that the evidence was closely balanced, these questions merely reflect the break in the chain of custody as to defendant's clothing. The questions also confirm that the trial court did not abuse its discretion in denying defendant's request to admit the clothing and receipt. While it would have been helpful to know how defendant came to be wearing different clothing in his booking photo, the jury's verdict demonstrates that knowledge was not ultimately essential for a finding of guilty. Defendant's contention that he received an unfair trial in violation of his due process rights thus fails.

¶ 22　　*Sufficiency of the Evidence*

¶ 23　　Defendant next contends the evidence was insufficient to prove him guilty of the offense beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. We will not overturn a criminal conviction except in instances where the evidence is so improbable or unsatisfactory as to warrant a reasonable doubt of the defendant's guilt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). Because the trier of fact is better situated to observe the witnesses, the trier of fact is entitled to assess their credibility, resolve conflicts in the evidence and draw reasonable inferences therefrom. *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 14. Thus, we will not substitute the trier of fact's credibility assessments with our own. *Id.*

¶ 24    To prove defendant guilty of aggravated unlawful use of a weapon in this case, the State was required to establish that defendant carried a handgun on or about his person when he was not on his own land or in his own abode or business, and he had not been issued a currently valid firearm owner's identification card. See 720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2010).

¶ 25    Defendant argues now, as he did below, that the "only evidence" connecting him to this crime was the fact that the individual who ran, discarded the weapon, and returned to it, was wearing a gray hoodie. Defendant maintains that he could not have been that individual given his booking photo and the evidence revealing he wore red pullover instead. He asserts this evidence rendered the officers' identifications of him unreliable.

¶ 26    The State responds that defendant was not identified as the person possessing the gun *solely* because he was wearing a gray hoodie, and we agree.

¶ 27    Here, Officer Lopez testified that he had a "front view" of defendant as he ran, with an object in hand, towards Officer Lopez. At about 20 feet away, and under "good" artificial lighting conditions, Officer Lopez announced his office and told defendant to stop. Instead, defendant ran towards a vehicle, threw his black revolver underneath, and fled, with Officer Lopez then observing this from about 8 or 10 feet away. Officer Wagner was also able to look at defendant's face as he reached into his waistband and threw his gun under the vehicle. Not less than an hour later, defendant returned to the same vehicle to retrieve his gun, but subsequently ran yet again when officers unveiled themselves. See *People v. Lewis*, 165 Ill. 2d 305, 349 (1995) (noting that flight, when considered in connection with all other evidence in a case, is a circumstance which may be considered by the jury as tending to prove guilt). As before, he was still wearing a gray hoodie. Officer Haleem gave chase while also radioing a description of defendant wearing a hoodie and black pants. Pursuant to that flash message, Officer Celani

apprehended defendant on foot, with Officer Haleem showing up seconds later to identify defendant as the individual he had been chasing. Defendant was then taken for a show-up, where Officers Lopez and Wagner identified him as the offender. He was still wearing the gray hoodie at that time.

¶ 28    The fact that officers observed defendant wearing a gray hoodie when running from police initially, when returning to the vehicle, when fleeing a second time, and finally when apprehended, merely buttressed the competent testimony identifying defendant as the individual who illegally possessed a gun on the streets of Chicago. A reviewing court will not reverse a conviction simply because the defendant claims that a witness was not credible. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The direct and circumstantial evidence taken together was more than sufficient support defendant's conviction, notwithstanding that defendant at some point apparently discarded his gray hoodie after his arrest.

¶ 29    And, while defendant again argues otherwise, the jury questions simply reflect the break in the chain of custody as to his sweatshirt and perhaps some juror confusion, skillfully sowed by the defense, as to the sweatshirt's significance. Similarly, one juror's statement that the guilty finding was not always his verdict does not render the evidence insufficient, where the juror ultimately determined that defendant in fact committed the crime.

¶ 30    *Rebuttal Closing Argument*

¶ 31    Defendant next contends the State committed prosecutorial error when, during rebuttal closing argument, the State asserted that defendant was not wearing any of his outer garments in the "mug shot" because "They're told to remove their outer garments for the mug shots." The State now responds that although defendant objected to the comment during rebuttal, defendant forfeited this matter by failing to raise it with any specificity in his posttrial motion. See *People*

*v. Enoch*, 122 Ill. 2d 176, 186 (1988) (requiring both a trial objection and written posttrial motion objection to preserve a question for review); *People v. Buchanan*, 211 Ill. App. 3d 305, 312 (1991) (noting, the allegation of prosecutorial misconduct cannot be too vague). Forfeiture aside, the State concedes this was error, noting the statement was based on facts not in evidence. The State nonetheless maintains any error was not a material factor in defendant's conviction. Defendant, on the other hand, counters that the error rose to the level of plain error, arguing for closely balanced evidence and substantial rights involved. We agree with the State.

¶ 32    A prosecutor is allowed wide latitude in closing arguments, and a prosecutorial misstatement does not necessarily deprive a defendant of a fair trial. *People v. Patrick*, 205 Ill. App. 3d 222, 228 (1990). Even if a prosecutor's closing remarks are improper, they do not constitute reversible error unless they result in substantial prejudice to the defendant such that absent those remarks the verdict would have been different. *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). In reviewing allegations of prosecutorial misconduct, the closing arguments of both the State and the defendant must be examined in their entirety and the complained-of comments must be placed in their proper context, while also considering their relationship to the evidence and the comments' effect on the defendant's right to a fair and impartial trial. *People v. Cisewski*, 118 Ill. 2d 163, 175-76 (1987); *People v. Williams*, 333 Ill. App. 3d 204, 214 (2002). A defendant faces a substantial burden to achieve reversal of his conviction based on improper remarks during closing argument. *People v. Meeks*, 382 Ill. App. 3d 81, 84 (2008).

¶ 33    While the parties disagree on the standard of review, we need not resolve the matter because our holding in this case would be the same under either *de novo* review or an abuse of discretion. See *People v. Alvidrez*, 2014 IL App (1st) 121740, ¶ 26; *but see People v. Cook*, 2018 IL App (1st) 142134, ¶¶ 61-64 (finding the standard of review clear). That is, viewing the

remarks in the context of the entire closing argument, as we must, we conclude there was no reversible error committed for the following reasons. See *Alvidrez*, 2014 IL App (1st) 121740, ¶ 26.

¶ 34    In the instant case, the prosecutor's comment was brief and unrepeated. While there was no evidence that arrestees are "told" to remove their outer garments for photos, there was evidence presented that arrestees are not required to wear the same clothing throughout their time at the police department and that there were instances of arrestees discarding outer garments prior to booking. The prosecutor emphasized in rebuttal that defendant was in a holding cell for some three hours just after his arrest, and it was there where he left the gray hoodie so as to discard evidence. The prosecutor's complained-of comment, while imprecise, echoed facts in evidence and was not the focus of rebuttal. In addition, the jury heard defense counsel's closing, which focused on the lack of clothing evidence tying defendant to the crime. Defense counsel further argued that police do not simply "let people throw stuff away." This directly contradicted the State's imprecise comment, and all of the above facts when viewed in context diminished any claimed prejudice. Moreover, while defense counsel at trial skillfully injected doubt in the jury's mind as to whether police arrested the right man, what defendant was wearing at his booking photo hours after the crime was undeniably collateral to the issue of whether police could competently identify him, which was the crux of the case. See *Alvidrez*, 2014 IL App (1st) 121740, ¶ 29. As set forth, the evidence was more than sufficient to establish defendant's identity as the offender.

¶ 35    Likewise, improper arguments can be corrected by proper jury instructions, which carry more weight than the arguments of counsel. See *People v. Willis*, 409 Ill. App. 3d 804, 814 (2011). Here, the trial court stated that the jury had heard all the evidence, that closing arguments

are not evidence, and that any comments not based on the evidence should be disregarded, all alleviating any possible prejudice. See *People v. Kliner*, 185 Ill. 2d 81, 159 (1998); *People v. Gonzalez*, 388 Ill. App. 3d 566, 598 (2008). The court thus provided sufficiently curative instructions. For the reasons stated and in light of the substantial evidence of defendant's guilt, we cannot say the verdict would have been different absent the prosecutor's single isolated remark. See *Cisewski*, 118 Ill. 2d at 177-78. There was no substantial prejudice.

¶ 36    Thus, to the extent there was any minor error, it was not so serious as to challenge the integrity of the judicial process, and the evidence was not closely balanced such that the error threatened to tip the scales of justice. See *Alvidrez*, 2014 IL App (1st) 121740, ¶¶ 25, 33. Therefore, defendant's contention regarding improper closing arguments does not rise to the level of plain error, and we find defendant has forfeited this contention.

¶ 37    *Confrontation Clause*

¶ 38    Defendant finally argues that his constitutional right to confront the witnesses against him was violated when the prosecutor admitted into evidence a State police certification attesting that defendant did not possess a valid FOID card. Defendant claims the document constituted an affidavit that was testimonial hearsay, the affiant was not subject to prior cross-examination and not shown to be unavailable, and the affidavit was admitted substantively for its truth. See *People v. Czapla*, 2012 IL App (2d) 110082, ¶ 11 (noting, *Crawford v. Washington*, 541 U.S. 36 (2004), held that testimonial hearsay by an unavailable witness accusing the defendant of a crime was inadmissible unless the defendant had a prior opportunity for cross-examination). Defendant notes the absence of a FOID card was an essential element of the crime.

¶ 39    Defendant relies on *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 16, wherein the State similarly presented a certified letter that the defendant did not have a valid FOID card to prove

13

the defendant guilty of aggravated unlawful use of a weapon. *Diggins* held the letter constituted an affidavit and was testimonial in nature because it was created for the defendant's prosecution; absent a showing that the witness was unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine him, the defendant was entitled to be confronted with the witness at trial.

¶ 40    We find *Diggins* distinguishable. That case was a bench trial, and most importantly, the issue was preserved on appeal, making it the State's burden to prove harmless error. As the State did not provide "any argument whatsoever" as to whether the confrontation clause violation was harmless, *Diggins* concluded the State failed to show beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* ¶¶ 17-18.

¶ 41    This case, by contrast, was tried before a jury. While exhibit 4, representing the certificate, was read into the record at trial, it is not part of the common law record. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (noting, any doubts arising from an incomplete record are resolved against the appellant). Most importantly, defendant admits that he neither objected to this claimed error at trial, nor in his posttrial motion thus forfeiting the issue. Defendant, instead, maintains that it constitutes plain error, arguing the evidence was closely balanced and the error was so serious that it affected the integrity of the judicial process. See *People v. Cox*, 2017 IL App (1st) 151536, ¶ 50.

¶ 42    As stated, the evidence in this case was far from closely balanced, where officers competently identified defendant as the offender who ran with a gun, discarded the gun, and then 40 minutes later returned for the gun. We reject defendant's contention that the certificate was the "only" evidence demonstrating defendant illegally possessed the gun. The uncontradicted circumstantial evidence of his flight on seeing police after shots had been fired, his hiding of the

weapon, his return for it, and subsequent flight all support that he did not possess the gun legally. See *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 19 (an individual's unprovoked flight on seeing police in an area known for crime is suggestive of wrongdoing). Plus, there's no evidence that defendant *did* have a FOID card such that we can say the claimed error threatened to tip the scales of justice against defendant. Likewise, courts have held that confrontation clause violations are not structural errors, so they are not cognizable under the second prong of plain error. *Cox*, 2017 IL App (1st) 151536, ¶ 87; *People v. Lewis*, 2019 IL App (1st) 160864, ¶ 53, relying on *People v. Patterson*, 217 Ill. 2d 407, 424-25 (2005); *Czapla*, 2012 IL App (2d) 110082, ¶ 12. Regardless, the record is insufficient to conclusively say the error infected the judicial process. While defendant bears the burden of persuasion to establish plain error, he simply has not fulfilled it here. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 43    Defendant also maintains that his trial counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to object to the admission of the certificate. To prevail on such a claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that the substandard performance prejudiced the defendant. *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Defendant now argues that had counsel objected to the certificate's admission, there was "at least a reasonable probability that the trial court would have sustained the objection and excluded the evidence." However, there was also a reasonable probability that the State would have then had the affiant testify as to defendant's lack of a FOID card. In other words, defendant's argument as to *Strickland* prejudice is entirely speculative, which is insufficient to establish prejudice. See *Id*. at 481. For the same reasons cited above, defendant's ineffective assistance claim must fail because he cannot establish prejudice given the record before us.

¶ 44    Likewise, defendant would be hard-pressed to overcome the strong presumption that his defense counsel's conduct was objectively reasonable and a matter of trial strategy. See *People v. Richardson*, 401 Ill. App. 3d 45, 47 (2010); see also *Cox*, 2017 IL App (1st) 151536, ¶ 88 (noting, the only way that defense counsel's decision not to object to the certification could possibly be ineffective assistance was if the defendant actually had a FOID card; otherwise, waiver was a matter of trial strategy). Here, counsel argued vigorously on defendant's behalf, and the strategy was to establish that he was the wrong criminal rather than whether he legally possessed the gun at hand. The record supports the conclusion that defense counsel's decision not to object was an intentional strategy given that testimony regarding defendant's failure to possess a FOID card would only have emphasized the unlawfulness of his conduct. See *People v. Johnson*, 2019 IL App (1st) 161104, ¶ 32.

¶ 45                                  CONCLUSION

¶ 46    For the reasons stated, we affirm the judgment of the circuit court.